[No. 13331-1-III.   Division Three.   July 28, 1994.]

WANDA SHEPARD, *Appellant,* v. GEORGE E. MIELKE, ET AL, *Defendants,* MANOR HEALTHCARE CORP., *Respondent.*

*James V. Woodard* and *Woodard & Hughes,* for appellant.

*Mark W. Hendrickson* and *Layman, Loft, Arpin & White,* for respondent.

SWEENEY, A.C.J. — Wanda Shepard was sexually assaulted by a visitor to her room at Manor Care Convalescent and Rehabilitation Center. Her suit for damages against Manor Care was dismissed on summary judgment and she appeals, contending (1) questions of fact exist with respect to Manor Care's negligent care; and (2) Manor Care owed an elevated duty of care due to Ms. Shepard's helpless condition. We reverse.

## FACTS

After corrective surgery for an intestinal disorder led to liver damage and the loss of her spleen, Ms. Shepard became dependent on pain medication and eventually suffered a perforated bowel from an overdose. Twenty-four hours after surgery for the perforated bowel, she suffered a heart attack and fell into a coma for 29 days, all of which left her with significant brain damage.

In April 1989, her sister placed Ms. Shepard in Manor Care Convalescent and Rehabilitation Center, a licensed nursing care facility in Spokane. She was briefly discharged, but then returned to Manor Care in a deteriorated and depressed condition. At this time she was in her early 50's, able to talk and to walk with assistance, but had little use of her hands. She began to have hallucinations and "screaming fits". When Manor Care was unable to calm her, it closed the door to her room so she would not disturb other residents.

Sometime after her return to Manor Care in July 1989, Ms. Shepard began to receive visits from George Mielke, the husband of a woman who was a resident at Manor Care. Mr. Mielke was well known to the staff at Manor Care because he assisted in caring for his wife three times a day. Ms. Shepard, her sister and her brother-in-law all thought Mr. Mielke was a "nice man", and did not object when he began visiting Ms. Shepard. Eventually, Mr. Mielke began sexually assaulting Ms. Shepard. She did not tell anyone at Manor Care. When she told her sister, her sister thought she had been hallucinating and told her to drop the subject. A Manor Care staff member finally walked in on Mr. Mielke as he

was assaulting Ms. Shepard and reported the incident. The police, rape crisis, Department of Social and Health Services and Ms. Shepard's sister were contacted immediately.

Ms. Shepard sued Manor Care for damages, alleging negligence.[1] Manor Care denied liability and alleged comparative negligence.[2]

Manor Care filed a motion for summary judgment. The Superior Court granted the motion on May 21, 1993, on the basis that Manor Care owed no special duty to Ms. Shepard beyond ordinary care; it had no knowledge Mr. Mielke was molesting Ms. Shepard; and Ms. Shepard's claim that Manor Care had failed to exercise ordinary care was unsupported. This appeal followed.

## DISCUSSION

A. Standard of Review. An appeal from a grant of summary judgment should be affirmed only if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). We must make the same inquiry as the trial court, viewing the facts in the light most favorable to the nonmoving party. *Youngblood v. Schireman*, 53 Wn. App. 95, 99, 765 P.2d 1312 (1988). The questions here are both legal and factual: the nature and extent of the duty owed by Manor Care to Ms. Shepard is a question of law and the foreseeability of the assault by a third party is a question of fact. *McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953).

B. Scope of Duty. Ms. Shepard contends the court erred in finding Manor Care owed only a duty of ordinary care. She argues a special relationship existed, because of her incapac-

---

[1] Ms. Shepard's claims against Mr. Mielke were not affected by the summary dismissal at issue here.

[2] In a third party complaint, Manor Care alleged Ms. Shepard's sister, Betty White, knew of the sexual assaults, had a duty to protect her sister, and breached that duty by failing to inform Manor Care. In the event it owed damages to Ms. Shepard as a result of this action, Manor Care sought a contribution from Ms. White as jointly and severally liable.

ities, which required Manor Care to take precautions to protect her.

■ Four elements are required to establish a cause of action in negligence: a duty of care owed to the plaintiff, breach of that duty, injury or damage, and a proximal relationship between the breach and injury. *Youngblood*, at 99. The existence of a duty is a question of law which is determined by foreseeability and policy considerations. *Youngblood*, at 99; *McKenna v. Edwards*, 65 Wn. App. 905, 912, 830 P.2d 385, *review denied*, 120 Wn.2d 1003 (1992).

In the case before us, Ms. Shepard focuses on her incapacity as the result of physical and mental impairments and medication administered while in the charge of Manor Care. Manor Care focuses on the foreseeability of the event giving rise to this action — the assault by Mr. Mielke. Both are correct.

■ Ms. Shepard's argument goes to the legal issue of Manor Care's duty of care. The function of a nursing home is to provide care for those who are unable because of physical or mental impairment to provide care for themselves. This impairment "is a condition the known existence of which creates a duty to safeguard the plaintiff from the foreseeable consequences of its existence". *Hunt v. King Cy.*, 4 Wn. App. 14, 24, 481 P.2d 593, *review denied*, 79 Wn.2d 1001 (1971).

■ The analysis urged by the parties and adopted by the trial court suggests the necessity of a special relationship[3] as a prerequisite to imposing a duty to protect Ms. Shepard from Mr. Mielke's criminal act. We disagree. The duty of ordinary care here would include the duty of taking reasonable precautions to protect those who are unable to protect themselves. Ms. Shepard could not lock her door, screen visitors, or generally provide for her own safety. She was in

---

[3] A higher standard of care, involving an affirmative duty to protect persons from the conduct of third parties, has been assigned to certain "special relationships", including common carrier and passenger, *e.g., Zorotovich v. Washington Toll Bridge Auth.*, 80 Wn.2d 106, 491 P.2d 1295 (1971); tavern keeper and patron, *e.g., Waldron v. Hammond*, 71 Wn.2d 361, 428 P.2d 589 (1967); landowner and invitee, *e.g., McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 414 P.2d 733 (1966); psychiatrist and mental patient, *e.g., Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983); and school district and pupil, *e.g., McLeod v. Grant Cy. Sch. Dist. 128, supra. See also* Restatement (Second) of Torts § 320 (1965).

Manor Care precisely because she was unable to perform these tasks for herself. Manor Care, like other nursing homes, holds itself out to the public as willing and able to provide these services, for a fee. Its knowledge of the condition of its residents creates a concomitant duty much like that of a hospital to safeguard residents against reasonably foreseeable risks of harm. *Hunt*, at 22; *May v. Triple C Convalescent Ctrs.*, 19 Wn. App. 794, 797, 578 P.2d 541 (1978).

How well it performed this duty is another question. Manor Care's argument, focusing on the foreseeability of the assault by Mr. Mielke, raises a factual question: Whether Manor Care adequately protected Ms. Shepard from a foreseeable risk. *Hansen v. Friend*, 118 Wn.2d 476, 483, 824 P.2d 483 (1992).

■ In order to establish foreseeability, the harm sustained need not be specifically foreseen, but must be reasonably perceived as within the general field of danger covered by the defendant's specific duty. *Hansen*, at 483-84. For instance, in *McLeod* the court held that the rape of a schoolchild in a playroom unattended by an adult need not be foreseeable; the dispositive question is whether the room could be utilized "for acts of indecency between school boys and girls". *McLeod*, at 322.

Foreseeability is a question of fact for a jury unless the circumstances of the injury "are so highly extraordinary or improbable as to be wholly beyond the range of expectability". *McLeod*, at 323. Considering the number of visitors who enter and leave nursing homes daily and the level of vulnerability found in many residents, it is not "highly extraordinary" a resident shut away in a room by herself, whose screams are often ignored, could be victimized by a third party. Accordingly, the question of foreseeability should go to the jury.

Reversed and remanded for trial.

MUNSON and SCHULTHEIS, JJ., concur.