[No. 17464-2-II.    Division Two.    March 15, 1996.]

LORI LYNNE SCHOOLEY, *Appellant,* v. PINCH'S DELI MARKET, INC., ET AL., *Respondents.*

864

*Shawn B. Briggs* and *Briggs & Briggs*, for appellant.
*Ronald C. Gardner* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, for respondents.

MORGAN, J. — Pinch's Deli Market, Inc., sold beer to Russell Bowser, a minor,[1] without asking for proof of age. Bowser furnished part of the beer to Lori Lynne Schooley, another minor. Schooley drank too much and was injured. The question on appeal is whether Pinch's can be held liable to Schooley. Our answer is yes.

On August 25, 1989, Bowser's parents were away, and he had access to their house and swimming pool. He was then 19.

That evening, Bowser and five other teenagers met at the house for a party. Schooley, then 18, was one of the five. She knew the house had a swimming pool, so she wore a swimsuit under her regular clothes.

---

[1]Throughout this opinion, we use the word "minor" to mean any person under 21 years of age. *See Hansen v. Friend*, 118 Wn.2d 476, 481, 824 P.2d 483 (1992).

All present wanted beer. Thus, they drove to Pinch's Deli, where Bowser had purchased beer at least a dozen times before. Bowser said later that Pinch's "had a cheap price on the kind of beer we liked and they didn't check for identification."[2]

Bowser and two others went into the store. Schooley and the remaining two waited in the car. Using money contributed by all or most of the six, Bowser purchased 96 12-ounce containers of beer, packed in four full cases. As anticipated, the store clerk did not ask for proof of age.

All six then went back to the house where, according to Schooley, "everybody cracked open a beer."[3] She "drank a few beers, I would say two to three beers."[4] Then, for the next hour or two, she joined in a drinking game called "quarters." As the game progressed, "we were pounding them, you know."[5]

After awhile, Bowser and one of the others grabbed Schooley and carried her toward the swimming pool. Perceiving they were going to throw her in, she asked if she could strip down to her swimsuit. They stopped at the edge of the pool and allowed her to do that. Then, before they could throw her in, she dove headfirst into the water. Sadly, she was at the shallow end of the pool, and the water was only two feet deep. She injured her spinal cord and is now a quadriplegic.

In July 1992, Schooley sued Pinch's for negligently selling alcohol to minors. In June 1993, Pinch's filed a motion for summary judgment, which the trial court granted. Schooley then filed this appeal.

In a negligence action, the elements are duty,

[2]Clerk's Papers at 53.

[3]Clerk's Papers at 20.

[4]Clerk's Papers at 20.

[5]Clerk's Papers at 21.

breach, causation, and damages.[6] It is undisputed that Schooley can prove damages. Thus, we analyze duty, breach and causation.

## I

■ The Supreme Court has stated "that an essential element in any negligence action is the existence of a legal duty which the defendant owes to the plaintiff."[7] This statement subdivides into the following components: (1) By whom is this duty owed? (2) To whom is it owed? (3) What is its nature (i.e., what is the standard of care)?[8] Each of these questions is one of law;[9] thus, it is to be answered generally, without reference to the facts or parties in a particular case.

■ We take the third question first, because it can be dealt with briefly. The duty involved here requires the exercise of ordinary care when selling alcohol to a person who might be underage.[10] Whether it arises from statute

---

[6]*Hansen*, 118 Wn.2d at 479; *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985); *Cox v. Malcolm*, 60 Wn. App. 894, 897, 808 P.2d 758, *review denied*, 117 Wn.2d 1014 (1991); *Callan v. O'Neil*, 20 Wn. App. 32, 36, 578 P.2d 890 (1978).

[7]*Peterson v. State*, 100 Wn.2d 421, 425-26, 671 P.2d 230 (1983); *see also Kelly v. Falin*, 127 Wn.2d 31, 36, 896 P.2d 1245 (1995); *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989).

[8]These questions show, among other things, that duty serves two different functions. On the one hand, it serves as a standard of care (i.e., as a yardstick against which to measure whether a defendant is "at fault"). On the other, it serves to bound the consequences of negligence (i.e., as a yardstick against which to measure where the consequences of a negligent act should end). In many cases, the first and second questions can be skipped, for it will be obvious that the duty is owed by persons like the defendant to persons like the plaintiff. But in some cases, including this one, all three questions must be addressed.

[9]*Hansen*, 118 Wn.2d at 479 (citing *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984)); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994); *Hutchins v. 1001 Fourth Ave., Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991); *Niece v. Elmview Group Home*, 79 Wn. App. 660, 668, 904 P.2d 784 (1995); *Shepard v. Mielke*, 75 Wn. App. 201, 205, 877 P.2d 220 (1994); *Howard v. Horn*, 61 Wn. App. 520, 523, 810 P.2d 1387, *review denied*, 117 Wn.2d 1011 (1991).

[10]*Hansen*, 118 Wn.2d at 479; *Purchase v. Meyer*, 108 Wn.2d 220, 737 P.2d 661 (1987); *Young v. Caravan Corp.*, 99 Wn.2d 655, 663 P.2d 834, 672 P.2d 1267 (1983); RCW 66.44.270(1); RCW 66.44.320.

or the common law is not clear, but the duty is the same either way.[11] Ordinary care is care equal to that which a reasonable person would exercise under the same or similar circumstances.[12]

█ To answer the first and second questions, we identify and define two classes of people. When a duty arises from contract, it is usually owed by one person or entity to another person or entity. When a duty arises from statute or the common law of torts, it is usually owed by one class of persons to another class of persons.[13] Because the duty involved here arises from statute or the common law of

---

[11]*Compare* RCW 5.40.050 *with Hansen,* 118 Wn.2d 476. *See also Purchase v. Meyer,* 108 Wn.2d 220; *Young,* 99 Wn.2d 655; RCW 66.44.270(1); RCW 66.44.320.

[12]*Fink v. Dixon,* 46 Wn.2d 794, 797, 285 P.2d 557 (1955); *Baughn v. Malone,* 33 Wn. App. 592, 597, 656 P.2d 1118 (1983); WPI 10.01.

[13]This is commonly recognized with regard to duties that arise from statute. The Restatement expressly provides, for example, that a court should adopt a statute as the standard of conduct of a reasonable person only if the Legislature's purpose was to protect a class to which the plaintiff belongs against the hazard from which the harm results. *Restatement (Second) of Torts* § 286; *see also Hansen,* 118 Wn.2d at 480; *Christen,* 113 Wn.2d at 502; *Young,* 99 Wn.2d at 659-60.

Though less commonly recognized, parallel reasoning applies to duties that arise from the common law, as several examples show. To say that a landowner owes a duty of ordinary care to a business invitee, but not to licensees or trespassers, is to say that one class of people (landowners) owes a duty of ordinary care to a second class of people (business invitees), but not to a third or fourth class of people (licensees, trespassers). *See Tincani,* 124 Wn.2d at 138; *Memel v. Reimer,* 85 Wn.2d 685, 538 P.2d 517 (1975). To say that a social host owes a duty of ordinary care not to serve alcohol to minors, but no duty to adults, is to say that a class of people (social hosts) owes a duty to a second class of people (minors), but not to a third class of people (adults). *See Hansen,* 118 Wn.2d 476; *Burkhart v. Harrod,* 110 Wn.2d 381, 755 P.2d 759 (1988). To say that a commercial (or quasi-commercial) vendor of alcohol owes a duty of ordinary care to third parties foreseeably endangered by an overserved patron, and to underage patrons, but not to overserved adults who injure themselves, is to say that one class of people (commercial vendors of alcohol) owes a duty to second and third classes of people (third parties, underage patrons), but not to a fourth class made up of adults who injure themselves. *See Dickinson v. Edwards,* 105 Wn.2d 457, 716 P.2d 814 (1986); *Purchase,* 108 Wn.2d 220; *Young,* 99 Wn.2d 655; *Kelly,* 127 Wn.2d at 40. To say that a common carrier owes the highest degree of care to its passengers is to say that one class of people (common carriers) owes a duty to another class of people (passengers). *See Benjamin v. City of Seattle,* 74 Wn.2d 832, 447 P.2d 172 (1968); *Murphy v. Montgomery Elevator Co.,* 65 Wn. App. 112, 828 P.2d 584 (1992). *See also* Clarence Morris, *Duty, Negligence and Causation,* 100 U. Pa. L. Rev. 189, 200-06 (1952) (discussing "class foreseeability" with or without a statute) and *Restatement (Second) of Torts* § 281, comment i, at 8 (1965) (analogizing statutory and common law provisions).

torts, it is owed by one class of persons (the obligated class) to another class of persons (the protected class).

The parties agree that the obligated class includes commercial vendors of alcohol.[14] Thus, the protected class is the main issue. According to Schooley, it includes any minor foreseeably put at risk by a negligent sale of alcohol. According to Pinch's, it includes the minor *purchaser* of alcohol, but no other minor, even if the latter was foreseeably put at risk by a negligent sale of alcohol. In short, Schooley says the protected class is bounded by the concept of foreseeability, while Pinch's says it is bounded by the concept of privity.[15]

Usually, the protected class is bounded by the concept of foreseeability.[16] When so bounded, it includes all persons

---

[14]In passing, we observe that the Washington Supreme Court has previously dealt with the obligated class. In *Dickinson v. Edwards,* 405 Wn.2d 457, and *Burkhart v. Harrod,* 110 Wn.2d 381, it held that the class obligated to obviously inebriated adults includes commercial vendors, but not social hosts. In *Young v. Caravan Corp.,* 99 Wn.2d 655, *Purchase v. Meyer,* 108 Wn.2d 220, and *Hansen v. Friend,* 118 Wn.2d 476, it held that the class obligated to minors includes both commercial vendors and social hosts.

[15]We do not address whether the protected class includes innocent bystanders, such as motorists or pedestrians using the public street. *See Purchase,* 108 Wn.2d 220. Nor do we address whether the protected class includes adults (i.e., persons over 21). *Compare Kelly v. Falin,* 127 Wn.2d 31, *with Young v. Caravan Corp.,* 99 Wn.2d 655; *compare Hansen v. Friend,* 118 Wn.2d 476, *with Burkhart v. Harrod,* 110 Wn.2d 381.

[16]*Hansen,* 118 Wn.2d at 483-84; *Taggart v. State,* 118 Wn.2d 195, 219, 224, 822 P.2d 243 (1992); *Christen,* 113 Wn.2d at 492; *Harbeson v. Parke-Davis,* 98 Wn.2d 460, 480, 656 P.2d 483 (1983); *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 933, 653 P.2d 280 (1982); *Berg v. General Motors Corp.,* 87 Wn.2d 584, 592, 555 P.2d 818 (1976); *Hunsley v. Giard,* 87 Wn.2d 424, 435-36, 553 P.2d 1096 (1976); *King v. City of Seattle,* 84 Wn.2d 239, 248, 525 P.2d 228 (1974); *Wells v. Vancouver,* 77 Wn.2d 800, 802-03, 467 P.2d 292 (1970); *Rikstad v. Holmberg,* 76 Wn.2d 265, 268-69, 456 P.2d 355 (1969); *McLeod v. Grant County Sch. Dist. 128,* 42 Wn.2d 316, 321-22, 255 P.2d 360 (1953) (quoting Fowler V. Harper, *Law of Torts* § 7, at 14 (1933)); *Berglund v. Spokane County,* 4 Wn.2d 309, 319-20, 103 P.2d 355 (1940) (quoting Harper, *Law of Torts* § 7, at 14 (1933)); *Jones v. Leon,* 3 Wn. App. 916, 923, 478 P.2d 778 (1970), *review denied,* 78 Wn.2d 997 (1971); *Palsgraf v. Long Island R. Co.,* 248 N.Y. 511, 162 N.E. 99, *reargument denied,* 249 N.Y. 511, 164 N.E. 564 (1928). Apparently, the reasons are as follows: The duty of ordinary care does not require more care than a reasonable person would exercise. A reasonable person can foresee, and avoid creating, foreseeable risk. A reasonable person cannot foresee, or avoid creating, unforeseeable risk. Thus, the duty of ordinary care proscribes only the creation of foreseeable risk and protects only those persons subjected to such risk. *See Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99.

foreseeably put at risk by the defendant's negligent conduct.[17] In effect, the defendant's conduct creates a "general field of danger," and all persons within the "field" belong to the protected class.[18]

Incidentally, to say that the protected class is generally bounded by foreseeability is not to say that the sequence of events in a particular case must be foreseeable. On the contrary, foreseeability is satisfied if "[t]he hazard that brought about or assisted in bringing about the result [is] among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent."[19] In other words, foreseeability means foreseeability from the point of view of a reasonable person who knows what the defendant's conduct will be, but who does not know the specific sequence of events that ultimately will ensue therefrom.

Although the protected class is usually bounded by foreseeability, it will sometimes be defined less inclusively. In *Kelly v. Falin,* 127 Wn.2d 31, 896 P.2d 1245 (1995), a tavern overserved an obviously inebriated adult patron who, while driving home, crashed and was killed. It seems obvious that the tavern's conduct created a foreseeable risk that the patron, upon leaving, would drive in such a way as to harm himself; thus, the patron would have been within the protected class if that class had been bounded by foreseeability. The *Kelly* court, however, ruled that the patron was not within the protected class. It said:

> Adults are expected to temper their alcohol consumption or simply refrain from driving when intoxicated. Unlike an in-

---

[17]*See* n.16.

[18]*Hansen,* 118 Wn.2d at 484; *Christen,* 113 Wn.2d at 492; *Maltman v. Sauer,* 84 Wn.2d 975, 981, 530 P.2d 254 (1975); *Wells,* 77 Wn.2d at 803; *Rikstad,* 76 Wn.2d at 269 (quoting *McLeod,* 42 Wn.2d 316); *Berglund,* 4 Wn.2d 309; *Fleming v. City of Seattle,* 45 Wn.2d 477, 483, 275 P.2d 904 (1954); *Shepard,* 75 Wn. App. at 206.

[19]*Rikstad,* 76 Wn.2d at 268; *see also Christen,* 113 Wn.2d at 492-93 (quoting *Rikstad); King,* 84 Wn.2d at 248; *Shepard,* 75 Wn. App. at 206; *Palsgraf,* 162 N.E. 99; *Restatement (Second) of Torts* § 435, comment c (1965).

nocent bystander hit by a drunk driver or a youth whose sense of immortality leads to reckless abandon, the responsibility for self-inflicted injuries lies with the intoxicated adult.[20]

It further said:

As a matter of public policy, we have premised the duty of commercial vendors on the need to protect innocent bystanders from intoxicated patrons, . . . and on the need to protect minors. . . . These public policy concerns are not present when intoxicated adults injure themselves.

A rule that allows an intoxicated adult to hold a commercial vendor liable fosters irresponsibility and rewards drunk driving. Rather than deterring drunk driving, excessive drinking, and the callow and imprudent behavior of intoxicated adults, such a rule would actually compensate patrons who drink beyond obvious intoxication. . . .[21]

(Citations omitted). The court concluded "that a commercial vendor owes no duty of care to [adult] patrons who suffer injuries as a result of their intoxication."[22]

As often happens, two social policies were competing in *Kelly*. One was the policy of compensating all persons foreseeably put at risk by a defendant's failure to exercise ordinary care. The other was the policy of not "compensat[ing] patrons who drink beyond obvious intoxication."[23] If the court had found the first policy to be dominant, it would have defined the protected class to include overserved adults who injure themselves. It found the second policy to be dominant, however, so it defined the protected

---

[20]*Kelly*, 127 Wn.2d at 39-40.

[21]*Kelly*, 127 Wn.2d at 41-42.

[22]*Kelly*, 127 Wn.2d at 42.

[23]*Kelly*, 127 Wn.2d at 42.

class as not including obviously inebriated—even though foreseeable—adult patrons who sue for their own injuries.[24]

In light of *Kelly*, we think the protected class is defined according to social policy. Usually, the dominant policy will be that of compensating all persons foreseeably put at risk by a defendant's failure to exercise ordinary care, and the protected class will be defined to include all persons foreseeably put at risk. Occasionally, however, the dominant policy will be different, and the protected class will be defined to include fewer than all persons foreseeably put at risk.[25]

In the present case, at least three social policies weigh in favor of bounding the protected class by foreseeability. One social policy is to protect minors from the negligent conduct of adults; the reason, according to the Supreme Court, is that "persons under 21 years of age are neither physically nor mentally equipped to handle the consumption of intoxicating liquor."[26] Another is to hold the person who engages in negligent conduct, including the commercial vendor of alcohol, accountable for his or her negligence, thus deterring the creation of unreasonable risk to others.[27] A third policy, already discussed above, is to compensate those foreseeably put at risk by a defendant's negligent conduct.

█ Pinch's seems to advance two policy arguments to the contrary. First, it contends that if we bound the protected class by foreseeability, commercial vendors will

---

[24]Cases similar to *Kelly* in their use of social policy may include *Hartley*, 103 Wn.2d at 784-85, and *King*, 84 Wn.2d at 249-50.

[25]In passing, it appears that the obligated class is also defined according to social policy. For example, in alcohol cases involving adults, the Supreme Court has said, for reasons of social policy, that the obligated class includes commercial vendors but not social hosts. *Dickinson v. Edwards,* 105 Wn.2d 457; *Burkhart v. Harrod,* 110 Wn.2d 381.

[26]*Hansen,* 118 Wn.2d at 481; *Young,* 99 Wn.2d at 660; *Callan,* 20 Wn. App. at 39.

[27]*See* W. Page Keeton, et al., *Prosser and Keeton on Torts,* § 30, at 164 (5th ed. 1984) (purpose of duty of ordinary care is to protect against unreasonable risk).

be subject to unlimited liability.[28] In our view, however, foreseeability is no less an effective limiter of liability in this case than in most tort cases. Second, Pinch's contends that once a commercial vendor has negligently sold alcohol to a minor, it has "no control" over ensuing events.[29] In our view, however, a commercial vendor has full control at the point of sale and, like any normal person or entity, should be held accountable for ensuing harm, provided that such harm is the result of foreseeable, unreasonable risk.[30] Thus, we hold that the protected class, in this as in most tort cases, is bounded by the concept of foreseeability.

Our holding is supported by *Hansen v. Friend*. In that case, a minor drowned in a lake while intoxicated. His personal representative sued the adult social hosts who had furnished him with alcohol. One of the defendants argued "that a social host's duty not to furnish liquor to a minor should be limited only to minors who subsequently drive while intoxicated."[31] At the core of this argument was the same assertion that Pinch's makes now: The protected class should be defined so as to include fewer than all minors foreseeably put at risk by the defendant's conduct. Rejecting this argument, the Supreme Court said that "the concept of foreseeability determines the scope of the duty owed" by social hosts to minors.[32] A fortiori, the concept of foreseeability should also determine the scope of the duty owed by commercial vendors to minors.

Our holding is further supported by various statements

---

[28]In Pinch's words, "If Ms. Schooley's reasoning were adopted, it would become impossible to determine where to draw the line of foreseeability." Br. of Resp't at 22.

[29]Br. of Resp't at 18; *see also* 20, 22, 23.

[30]Pinch's also states that its relationship to a transferee minor (i.e., to a minor to whom the purchasing minor delivers the purchased alcohol) is "too attenuated" to support liability. Br. of Resp't at 13, 18. This statement, however, is conclusory. It assumes the question to be decided, which is whether the relationship between Pinch's and Schooley is close enough, or too attenuated, to support liability.

[31]*Hansen*, 118 Wn.2d at 483.

[32]*Hansen*, 118 Wn.2d at 483.

from our Supreme Court which, though not conclusive, tend to indicate that a commercial vendor's duty of ordinary care is meant to protect all, not just some, minors. The court has said that the Washington Legislature has "saddle[d] the provider of alcohol with a duty of care toward minors."[33] It has further said, "we have premised the duty of commercial vendors . . . on the need to protect minors."[34] It has further said that the duty not to sell alcohol to minors is intended "to protect against foreseeable hazards;"[35] that one such hazard "is alcohol in the hands of minors;"[36] and that "persons under 21 years of age are neither physically nor mentally equipped to handle the consumption of intoxicating liquor."[37] None of these statements suggests that we should distinguish among minors on the basis of any criterion except foreseeability.[38]

Our holding is consistent with the view of a majority of other jurisdictions.[39] We are aware of three jurisdictions that may have ruled to the contrary, but their statutes are different or their opinions not persuasive.[40]

---

[33]*Kelly,* 127 Wn.2d at 39.

[34]*Kelly,* 127 Wn.2d at 41.

[35]*Christen,* 113 Wn.2d at 504.

[36]*Hansen,* 118 Wn.2d at 482.

[37]*Hansen,* 118 Wn.2d at 481; *Young,* 99 Wn.2d at 660; *Callan,* 20 Wn. App. at 39.

[38]Also, we note that the Supreme Court has not applied to minors the social policy found dominant in *Kelly.* In *Young,* 99 Wn.2d 655, the court allowed an inebriated minor to recover for his own injuries.

[39]*Paskiet by Fehring v. Quality State Oil Co., Inc.,* 164 Wis. 2d 800, 476 N.W.2d 871 (1991); *Thompson v. Victor's Liquor Store, Inc.,* 216 N.J. Super 202, 523 A.2d 269 (1987); *Anderson v. Moulder,* 183 W. Va. 77, 394 S.E.2d 61 (1990); *Morris v. Farley Enters., Inc.,* 661 P.2d 167 (Alaska 1983); *Reber v. Commonwealth,* 101 Pa. Commw. 397, 516 A.2d 440 (1986), *appeal granted,* 515 Pa. 590, 527 A.2d 548 (1987); *see also Davis v. Billy's Con-Teena, Inc.,* 284 Or. 351, 587 P.2d 75 (1978).

[40]*Dobson v. Maki,* 184 Mich. App. 244, 457 N.W.2d 132 (1990); *Parker v. Miller Brewing Co.,* 560 So.2d 1030 (Ala. 1990); *Salem v. Superior Court,* 211 Cal. App. 3d 595, 259 Cal. Rpts. 447 (1989).

Pinch's relies on *Mills v. Estate of Schwartz*[41] and *Hostetler v. Ward*,[42] but neither case is apropos here. The premise in *Mills* was that third persons injured by an inebriated minor were not part of the protected class; a year later, the Supreme Court ruled to the contrary in *Purchase v. Meyer*. *Hostetler* did not even involve a commercial vendor, and thus has nothing to do with the present problem.[43] We conclude that a commercial vendor's duty to exercise reasonable care when selling alcohol to possible minors is bounded by foreseeability, and that the class protected by such duty includes those minors foreseeably put at risk by the vendor's conduct.

## II

■■ Breach mirrors duty. To prove breach a plaintiff must show (1) that the defendant is a member of the obligated class; (2) that the plaintiff is a member of the protected class; and (3) that the defendant violated the standard of care.[44] Each of these questions is a question of fact for the jury, unless reasonable minds could not differ.[45]

The first and third questions are not in issue here. Pinch's concedes that it is a commercial vendor, and thus a member of the obligated class. It also concedes, at least for purposes of this appeal, that it violated the standard of care when it sold beer to Bowser without asking for proof of age.

Like the parties, we focus primarily on the second ques-

[41]44 Wn. App. 578, 584, 586, 722 P.2d 1363, *review denied*, 107 Wn.2d 1010 (1986).

[42]41 Wn. App. 343, 704 P.2d 1193 (1985), *review denied*, 106 Wn.2d 1004 (1986).

[43]*See Purchase*, 108 Wn.2d at 229 (distinguishing *Hostetler*).

[44]In many cases, the first and second questions can be skipped, for affirmative answers will be obvious. Here, however, we address each of the three.

[45]*Caughhell v. Group Health Coop.*, 124 Wn.2d 217, 235, 876 P.2d 898 (1994); *Johnson v. State*, 77 Wn. App. 934, 937, 894 P.2d 1366, *review denied*, 127 Wn.2d 1020 (1995); *Leonard v. Pay'n Save Drug Stores, Inc.*, 75 Wn. App. 445, 451-452, 880 P.2d 61 (1994); *Bader v. State*, 43 Wn. App. 223, 228, 716 P.2d 925 (1986).

tion. Pinch's argues that "[n]o reasonable mind could conclude that Ms. Schooley's consumption of beer was foreseeable to Pinch's."[46] It says we should find, as a matter of law, that its conduct did not create foreseeable risk to Schooley, and that she was not a member of the protected class. Schooley argues, conversely, that "a jury could find that it was entirely foreseeable that the beer would be consumed by a group of minors."[47] According to her, foreseeability (and her consequent membership in the protected class) is a question of fact for the jury.

In Washington, it is well settled that foreseeability is a question of fact unless reasonable minds could not differ.[48] Here, Pinch's sold no less than *96* cans or bottles of beer to three persons. Given this amount of intoxicants, a jury could find that a reasonable person would have foreseen that some of the 96 cans or bottles would be shared with other persons, probably in a party setting; that the other persons were likely to be of approximately the same age; that one or more of the other persons were likely to abuse the alcohol; and that one or more persons were likely to be injured as a result. As a result, foreseeability is a question for the jury to resolve, and a trial is required.

## III

Causation subdivides into cause in fact and "legal causation."[49] A cause in fact is a cause but for which the accident would not have happened; a legal cause is a cause

---

[46]Br. of Resp't at 22.

[47]Br. of Appellant at 7.

[48]*Hansen,* 118 Wn.2d at 483; *Taggart v. State,* 118 Wn.2d at 224; *Christen,* 113 Wn.2d at 492; *Bernethy,* 97 Wn.2d at 933; *Shepard,* 75 Wn. App. at 206.

[49]*Hartley,* 103 Wn.2d at 777; *Channel v. Mills,* 77 Wn. App. 268, 273, 890 P.2d 535 (1995). Speaking of "legal cause," commentators have said, "There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion." 3 Stuart M. Speiser, et al., *The American Law of Torts* at 378 (1983) (quoting *Prosser and Keeton on Torts* § 41 (5th ed. 1984)).

in fact that warrants legal liability as a matter of social policy.[50] Legal cause is a question of law for the court, while cause in fact is a question for the jury unless reasonable minds could not differ.[51]

Cause in fact is not in issue here. Pinch's concedes, at least for purposes of this appeal, that Schooley's accident would not have occurred but for its sale of beer to Bowser.

For present purposes, "legal cause" and "duty" are congruent if not identical. Regardless of which label is used, the real question is whether persons in the defendant's position owe a legally enforceable, societally recognized obligation to persons in the plaintiff's position. This question can be posed by asking whether the defendant owes a duty to plaintiff, or whether the defendant is a "legal cause" of harm to the plaintiff.[52] Thus, the Washington Supreme Court has said that "[t]he question of legal causation is so intertwined with the question of duty that the former can be answered by addressing the latter."[53] The court has also said, "It is quite possible, and often helpful, to state every question which arises in connection with 'proximate cause' [legal causation] in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?"[54] Finally, the court has actually addressed legal cause "from the standpoint of duty."[55]

Given this congruence of legal cause and duty, legal cause here is merely (1) whether Pinch's is within the obligated class and (2) whether Schooley is within the

---

[50]*Hartley,* 103 Wn.2d at 778-79; *Channel,* 77 Wn. App. at 272-73.

[51]*Hartley,* 103 Wn.2d at 778-79.

[52]"The differences between these . . . formulations are largely verbal, but a choice of one, rather than another, sometimes affects decisions." Clarence Morris, *Duty, Negligence and Causation,* 100 U. Pa. L. Rev. 189 (1952).

[53]*Taggart,* 118 Wn.2d at 226.

[54]*Hartley,* 103 Wn.2d at 779.

[55]*Hartley,* 103 Wn.2d at 778-79 (describing *Peterson,* 100 Wn.2d at 435-36). *See also Harbeson,* 98 Wn.2d at 476 ("if cause in fact is established, the proximate cause element is satisfied").

protected class. We have answered those questions affirmatively. Hence, legal cause is satisfied in this case.

In conclusion, commercial vendors of alcohol owe a duty of ordinary care not to sell alcohol to minors. Such duty is owed not just to the minor who purchases, but to those minors foreseeably put at risk by the vendor's conduct. Here, Schooley has evidence sufficient to support an argument that she is such a minor. Hence, summary judgment should not have been granted.[56]

Reversed and remanded for further proceedings.

HOUGHTON, A.C.J., and WIGGINS, J. Pro Tem., concur.

Review granted at 129 Wn.2d 1025 (1996).

---

[56]In reaching this conclusion, we do not comment on whether Schooley was not contributorily negligent; on whether Bowser was contributorily negligent; or on the applicability of RCW 5.40.060. *See Hansen*, 118 Wn.2d at 484; *Young*, 99 Wn.2d at 661-62. None of these questions is before us at this time.