[Nos. 40654-0-I; 40953-1-I.    Division One.    March 29, 1999.]

MISCHELLE BENHAM, *Appellant*, v. SEAN NESBITT WRIGHT, ET AL., *Defendants*, AMERICAN STATES INSURANCE COMPANY, *Respondent*.

*Eugene N. Bolin, Jr.*, of *The Law Offices of Eugene N. Bolin, Jr.*, for appellant.

*William C. Smart* and *Laurence R. Weatherly* of *Keller Rohrback*, for respondent.

KENNEDY, C.J. — An insured who is involved in even the most minor of traffic accidents has a duty to conduct a reasonable inquiry with respect to injuries before he or she can claim that there is no obligation to report the accident to his or her insurer. Because it is undisputed that no reasonable inquiry was conducted in the present case and that American States Insurance Company was actually prejudiced when a default judgment was entered in favor of Mischelle Benham, the injured party, American States is entitled to judgment as a matter of law that there was no coverage under its liability policy. Accordingly, we affirm the trial court's grant of summary judgment dismissing Benham's garnishment action.[1]

## FACTS

On January 1, 1992, Mischelle Benham was the victim of a minor hit-and-run accident. A Monroe police officer witnessed the accident and called a state trooper, who arrested Sean Nesbitt Wright—the driver of the fleeing Jeep that struck the vehicle in which Benham was a passenger—for DUI and hit-and-run. The trooper described Wright as "unsteady" and "off balance" with "obvious impairment." Clerk's Papers at 441-43. Two hours after the accident, Wright's blood alcohol level registered at 0.19 and 0.18.

On the traffic collision report, the trooper noted that

[1]Benham's remaining contentions are addressed in the unpublished portion of this opinion.

Benham had a "sore right leg." *Id.* at 440. The Monroe police officer, who also listed Benham's sore leg on his report, noted that she was "[e]xamined by the aid crew at the scene[, but] not transported." *Id.* at 454. Later that day, Benham sought treatment in the emergency room for knee and back pains. Still, Wright, two of his passengers, and the driver of the vehicle in which Benham was riding maintained that there was no evidence of any injury to anyone on the night of the accident.

In December 1994, Benham filed a complaint against Wright and his wife[2] to recover damages for injuries she sustained as a result of the accident. Benham served Wright with notice, but the trial court received no answer or other response to the complaint. In October 1995, the trial court entered a default judgment, awarding $125,000 to Benham.

In August 1996, Benham applied for a writ of garnishment against Wright and American States Insurance Company, the insurer of the fleeing Jeep. The insurance policy on the Jeep—which covered Wright as a permissive driver—was issued to Lynn Paddock, the Jeep's registered owner. Paddock did not learn of Wright's accident until she received a copy of the default judgment from Benham's attorney on June 10, 1996. And, despite American States' policy, which conditions coverage upon prompt notification of an accident,[3] American States first learned of Wright's

---

[2]In this complaint, Benham also named other defendants who are not relevant to this appeal. Benham did not name Lynn Paddock, the registered owner of the Jeep.

[3]This provision states:

Coverage is conditional upon your fulfillment of these requirements.

A.  We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B.  A person seeking any coverage must:

1.  Cooperate with us in the investigation, settlement or defense of any claim or suit.

2.  Promptly send us copies of any notice or legal papers received in connection with the accident or loss.

Clerk's Papers at 215.

January 1, 1992 accident on June 11, 1996, from Paddock.

In American States' answer to Benham's writ of garnishment, it stated that it "is not in possession of any funds due and owing to Sean Wright because there is no coverage for the judgment entered against Sean Wright" under the policy on the Jeep. *Id.* at 300. In response, Benham argued that coverage under the policy depends on whether Wright's failure to notify American States, due to his mistaken belief that no insurance claims would arise from this accident, was justifiable.

The trial court granted American States' motion for summary judgment dismissal of Benham's claims and declared that "the policy of insurance issued by American States Insurance Company covering the vehicle that was being driven by Sean Wright at the time of the January 1, 1992 accident provides no coverage for any claims of any kind whatsoever growing out of that accident." *Id.* at 134-35. The trial court denied Benham's motion for reconsideration. Benham appeals.

## DISCUSSION
### I. Coverage for the Accident

Benham contends that there is a genuine issue of material fact as to whether Wright was required to notify American States of the January 1, 1992 accident. She asserts that the trial court erred by concluding as a matter of law that there was no coverage under American States' policy for Wright because Wright's failure to notify American States was justified by his reasonable belief that no injury resulted from the accident. American States responds that Wright had a duty to inquire about the accident under the due diligence doctrine, and an ensuing duty to notify American States of Benham's injury and related claim under the terms of its policy. Because Benham does not dispute that Wright failed to inquire about the accident and failed to notify American States, American States asserts that it is entitled to dismissal of Benham's garnishment action.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

■ An insured is required to notify the insurer of a potential claim "to allow the insurer to make an investigation of the accident in order to prepare a defense, and to afford the insurer an opportunity to control the litigation." *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 451, 313 P.2d 347 (1957). But "numerous cases underscore the rule that an insured may, under a proper showing of circumstances, be excused for a delay or failure to notify the insurer of an accident or occurrence." *State Farm Mut. Auto. Ins. Co. v. Erickson*, 5 Wn. App. 688, 692, 491 P.2d 668 (1971).

For example,

> where no reasonable ground appears for a belief that a claim for damages against the insured driver may be expected to arise from a traffic incident, he [or she] is not required to notify the company until subsequent facts would suggest to a person of ordinary and reasonable prudence that a claim for damages may arise as a result of such incident.

*Id.* at 694; *accord* WASH. STATE BAR ASS'N, WASHINGTON MOTOR VEHICLE ACCIDENT INSURANCE DESKBOOK § 2.4(1), at 4-3 (1989) (citing ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 1.02 (2d ed. 1988)). The rationale for this well-established rule was recognized by our Supreme Court in 1923:

> An injury might be of such character as to afford, at first, no reasonable ground for thinking that it might support a

claim for damages against the employer. In such case we think the assured would not be required under the reasonable rule of construction we are discussing to give the assurer notice until such time as the facts of the injury and its progress began to suggest to a person of reasonable care and prudence that a possible liability of the assured to answer in damages lurked in them.

Frequently an injury apparently too trivial to cause any damage or inconvenience develops into a most serious phase. The duty of the assured in such instances with respect to giving notice is performed if he gives notice within a reasonable time after the injury first takes on a serious aspect, an aspect suggestive of a possible claim for damages.

*McKenna v. International Indem. Co.*, 125 Wash. 28, 36, 215 P. 66 (1923) (citation omitted). "What is reasonable must be measured by what a reasonably prudent [person] would believe in like circumstances." *Erickson*, 5 Wn. App. at 692.

█ American States asks this court to adopt the "due diligence" requirement, which would require the insured to conduct a reasonable inquiry before he or she can conclude that there is no obligation to notify his or her insurer. Although an insured's belief that no injuries resulted from an accident may be reasonable under some circumstances, we are persuaded that it is not reasonable for an insured to rely upon that belief without any investigation whatsoever. Accordingly, we hold that there is a "due diligence" requirement in Washington. In other words, an insured who is involved in a traffic accident, however slight, has a duty to conduct a reasonable inquiry with respect to injuries before he or she can claim there is no obligation to report the accident to his or her insurer.

Under this requirement, "the insured is not required to give the insurer notice of an accident where he in good faith is ignorant of the injury and has used reasonable diligence in concluding that no claim would result from the accident." 13A GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW § 49:131, at 358-59 (Ronald A. Anderson ed., 2d ed., Mark S. Rhodes ed., rev. vol. 1982) (citations omitted).

The Mississippi Supreme Court has explained the reasons for requiring "due diligence":

> When an insured has knowledge of an accident involving the coverage under his insurance contract, it is his [or her] duty to exercise reasonable care, due diligence as a reasonable and prudent [person], to acquire information about the accident, so that he [or she] may be readily informed about claims out of which damage may arise.

> It is not enough for the insured to act upon his [or her] own cursory knowledge of the facts; he [or she] must make an effort to know the facts.

*Harris v. American Motorist Ins. Co.*, 240 Miss. 262, 126 So. 2d 870, 873 (1961) (citations omitted); *accord Fireman's Fund Indem. Co. v. Kennedy*, 97 F.2d 882, 889 (9th Cir. 1938). "Whether [the insured's] investigation reveals that a claim is or is not likely to be made, [the insured] may place the onus of either contingency upon the insurer by giving notice of the occurrence promptly." *Dunn v. Travelers Indem. Co.*, 123 F.2d 710, 712 (5th Cir. 1941).

Here, Wright knew that he was involved in a hit-and-run accident with Benham, albeit a minor one. A police officer and a state trooper noted Benham's sore leg in their respective written reports, and Benham was examined by the aid crew at the scene. Wright maintained that he "did not see any evidence of any injury to anyone on the night of the accident[.]" Clerk's Papers at 99. But it is undisputed that Wright made no effort to inquire about potential injuries, and that he failed to notify American States of the accident. His belief that the accident was so slight that he had no obligation to even inquire as to injuries was not reasonable—would not have been reasonable even if Wright had been sober and was doubly unreasonable given his lack of sobriety—for it would be poor public policy indeed to allow impaired drivers to claim that they have no obligation to make reasonable inquiry about the possibility of injury arising from accidents in which they are involved, however slight such accidents may appear to them to be. Indeed, if Wright had investigated, that night or when he sobered up the next day, he would have learned that Benham had

received an injury. We conclude that Wright's failure to exercise due diligence before concluding that he had no obligation to report the accident to the insurer constitutes noncompliance with American State's policy.

■ "Noncompliance with a policy provision does not deprive the insured of the benefits of the policy unless the insurer demonstrates actual prejudice resulting from the insured's noncompliance." *Canron v. Federal Ins. Co.*, 82 Wn. App. 480, 485, 918 P.2d 937 (1996), *review denied*, 131 Wn.2d 1002 (1997). By failing to notify American States of the January 1, 1992 accident, Wright prevented American States from investigating the accident and preparing a defense. It is undisputed that when the default judgment was entered establishing Wright's liability to Benham, American States was thereby prejudiced. Wright, not American States, should be responsible for this liability. Thus, we conclude as a matter of law that the trial court properly dismissed this garnishment action against American States.

Accordingly, we affirm.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

WEBSTER and BAKER, JJ., concur.